**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | | |
|---|---|---|---|---|
| JOSEPHINE MCALLISTER, *et al.*, | : | | | |
| | : | | | |
| Plaintiffs, | : | Civil Action No.: | 11-cv-2173 (RC) |
| | : | | | |
| v. | : | Re Document No.: | 21,23 |
| | : | | | |
| DISTRICT OF COLUMBIA, | : | | | |
| | : | | | |
| Defendant. | : | | | |

## <u>MEMORANDUM OPINION</u>

## I. INTRODUCTION

The plaintiffs are the parents of children with special needs who litigated cases

brought against the District of Columbia Public Schools ("DCPS") under the Individuals with

Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1415 *et seq*. This case, an aggregate

of twenty-three separate matters, presents the plaintiffs' claims for attorneys' fees under the fee-

shifting provision of the IDEA. Specifically, plaintiffs seek a total of $386,139.52 in attorneys'

fees, plus costs for hours billed by Tyrka & Associates, LLC from 2008 to 2013.

## II. LEGAL STANDARDS

### A. Summary Judgment

A party moving for summary judgment on legal fees must demonstrate prevailing party

status and the reasonableness of the fees requested in terms of hours spent and hourly rate. *See*

*infra* Part B. Pursuant to Fed. R. Civ. P. 56(a), summary judgment shall be granted if the movant

shows that "there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56). Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The court is required to draw all justifiable inferences in the non-moving party's favor and to accept the non-moving party's evidence as true. *Anderson*, 477 U.S. at 255. The non-moving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. The non-moving party cannot rely on allegations or conclusory statements; instead, the non-moving party is obliged to present specific facts that would enable a reasonable jury to find in its favor. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B. Individuals with Disabilities Act ("IDEA")

Pursuant to the IDEA, a district court may award "reasonable attorneys' fees" to a prevailing party who is the parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B). Accordingly, a court bases its award of fees on a two-step inquiry: first, the court must determine whether the party seeking attorney's fees is the prevailing party, and second, the court must determine whether the requested fees are reasonable. *See Jackson v. Dist. of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010).

First, a plaintiff must demonstrate that she is a "prevailing party" to recover any attorney's fees under the IDEA. 20 U.S.C. § 1415(i)(3)(B). A "prevailing party" is one "who has been awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). Specifically, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant

issue in litigation which achieves some of the benefit the parties sought in bringing suit."

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278 (1st Cir. 1978)); *see also Artis ex rel. S.A. v. Dist. of Columbia*, 543 F. Supp. 2d 15, 22 (D.D.C. 2008) (noting that "[a]lthough a hearing office may make a prevailing party determination, it is the province of the district court to make the ultimate decision as to who prevailed in an IDEA action"). In *District of Columbia v. Straus*, the Court of Appeals applied a three-part test to determine prevailing party status: "(1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." 590 F.3d 898, 901 (D.C. Cir. 2010) (quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492-93 (D.C. Cir. 2003)).

After concluding that a plaintiff is a "prevailing party," the court must then determine whether the fees sought are reasonable. 20 U.S.C. § 1415(i)(3)(B). As this will depend on a case's particular facts, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" – the so-called "lodestar fee." *Hensley*, 461 U.S. at 433; *see also Jackson*, 696 F. Supp. 2d at 101 (applying *Hensley* in the IDEA context).

The plaintiff bears the burden of establishing the reasonableness of any fee requests, specifically that both the hourly rate and the number of hours spent on any particular task are reasonable. *In re North*, 59 F.3d 184, 189 (D.C. Cir. 1995). A plaintiff may do so by submitting evidence on at least three fronts: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates of the relevant community." *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). Once the plaintiff has provided such

information, a presumption arises that the number of hours billed is reasonable and the burden

shifts to the defendant to rebut the plaintiff's showing.  *Id.* at 1109-10.  However, if both parties

fail to present satisfactory evidence demonstrating that their hourly rates are reasonable, the court

may determine the amount of that rate by reference to the *Laffey* Matrix.[1]  *See Rooths v. Dist. of*

*Columbia*, 802 F. Supp. 2d 56, 62 (D.D.C. 2011).

## III.  ANALYSIS

### A.  The Number of Hours Billed by Plaintiffs' Counsel

#### 1.  Attorney's Fees for Students N.M. and S.S.

##### a. The Plaintiffs Are Prevailing Parties in Both N.M's Case and in S.S.'s Case.

The defendant argues that the plaintiffs are not entitled to an award of attorney's fees for

students N.M. and S.S. because they failed to achieve prevailing party status.  *See* Def.'s Opp'n

Mot., 18, June 25, 2013, ECF No. 22.  Further, the defendant argues that even if the Court finds

that the plaintiffs prevailed in these cases, the Court should nonetheless reduce any fees awarded

to account for their limited success.  *See* Def.'s Reply, 8, July 30, 2013, ECF No. 26.

To reach prevailing party status in the N.M. and S.S. case, the plaintiff, in both cases,

must have: (1) experienced a court-ordered change in its relationship with the District; (2)

obtained a favorable judgment; and (3) received a judicial pronouncement accompanied by some

judicial relief.  *See Straus*, 590 F.3d at 901 (articulating the three-part test for determining

prevailing-party status).  However, a party need not succeed on every claim to reach prevailing

party status; it is within a court's discretion to consider the extent to which a party prevails on

various issues in calculating fee awards.  *See Hensley*, 461 U.S. at 433 (explaining that if a party

---

[1] The Laffey Matrix is a matrix of hourly rates for attorneys of varying experience levels and paralegals/ law clerks.  The matrix is prepared by the Civil Division of the United States Attorney's Office for the District of Columbia for use when a "fee-shifting" statute permits the recovery of reasonable attorney's fees.

enjoys limited success on the merits, a court may reduce an award accordingly). "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989).

Defendant argues that there was no material alteration of the legal relationship between the parties in the N.M. case because, although the hearing officer found that N.M. was denied a FAPE, the only relief awarded plaintiff was an MDT/IEP meeting where a Spanish-English translator would be present, which DCPS is already required to provide by law. Def's Opp'n, 19-20; *see also* Pl.'s Mot. Summ. J., Ex. 1c, 11,May 14, 2013. In support of this argument, Defendant cites to *White, et al., v. District of Columbia*, where Judge Huvelle found no material alteration of the legal relationship when a hearing officer found there was *no* denial of a FAPE and ordered a new MDT/IEP meeting as the sole relief. No.11-cv-1292, at *9 (D.D.C. June 18, 2012). However, in *White* the ordered MDT/IEP meeting would have occurred *regardless* of whether the Plaintiff or the Defendant prevailed at the administrative hearing. *White*, No.11-cv-1292 at *9 (finding no alteration of the parties legal relationship because "the order to convene the meeting would have been issued no matter who prevailed"); *see also McCrary v. Dist. of Columbia*, 791 F. Supp. 2d 191, 199 (D.D.C. 2011) (finding that an order to convene a placement meeting was insufficient to alter the legal relationship of the parties because the student was incorrectly placed at a private school, and a placement meeting would have been necessary regardless of whether the plaintiff or defendant prevailed).

That is not the case here. The hearing officer ordered a new MDT/IEP meeting for N.M. *precisely because* the Plaintiff met its burden of proof and prevailed on a substantive issue: that N.M's parent was "denied the right to meaningful participation in Student's 3/10/08 IEP meeting

when DCPS failed to provide adequate translation from English to Spanish." Pl.'s Mot., Ex 1c, 9. And as the hearing officer noted, the denial of this procedural right at the meeting was "significant because Parent wanted and still wants, another educational placement for Student." Pl.'s Mot., Ex 1c, 9. Had the hearing officer found that the Defendant prevailed on this procedural issue, the 3/10/08 IEP meeting would have been procedurally adequate, and no new meeting would have been required. Thus, unlike in *White* and *McCrary*, an MDT/IEP meeting would not have been ordered regardless of which party prevailed, and thus the hearing officer's order altered the legal relationship of the parties.

Defendant argues that Student S.S. was also not a prevailing party because S.S. only "obtained one-fourth of the relief requested." Def.'s Mot., 21. However, Defendant cites no authority supporting this argument that Plaintiff must win a significant portion of its requested relief in order to constitute a prevailing party. And in fact, that is not the law in this District. "[T]he *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the *size* of a reasonable fee, not to eligibility for a fee award at all." *Tex. State Teachers Ass'n*, 489 U.S. at 790 (emphasis added). Thus "[w]hile partial versus complete success is a consideration in assessing the amount of fees, the critical question in evaluation of the availability of fees is whether fee claimants have received any benefit at all." *Grano v. Barry*, 783 F.2d 1104, 1109 (D.C. Cir. 1986). (citation omitted). DCPS does not contest that S.S. received some benefit from the due process hearing, nor does it contest that such relief altered the legal relationship of the parties. And the hearing officer's order requiring DCPS to fund an independent vocational evaluation is a material alteration of the parties legal relationship. *See e.g.*, *McNeil v. Options Public Charter School*, 2013 WL 791199, at *5 (D.D.C. March 1, 2013) (collecting cases where courts found that an order to conduct evaluations at the

public expense was a material alteration of the legal relationship between the parties). Thus, the Court finds that both S.S. and N.M. are prevailing parties.

### b. The Court Will Reduce Plaintiffs' Award To Account For Limited Success.

Defendant next argues that even if the Court finds that the plaintiffs prevailed in these cases, the Court should nonetheless reduce any fees awarded to account for their limited success. *See* Def.'s Reply, 8. It is within the court's discretion to reduce an attorney's fee award to account for limited success on the merits. *Hensley*, 461 U.S. at 433. And both N.M. and S.S. received less than all of the relief sought, thus justifying a reduction in fees. *See Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 121-23 (D.D.C. 2010) (reducing the fee award because the plaintiffs received some but not all of their requested relief). Here the court may reduce fees to account for the plaintiffs' limited success in a number of ways, such as by eliminating specific hours or reducing the award as a whole. *Hensley*, 461 U.S. at 436-37.

When determining how to reduce fee awards for partially successful plaintiffs, the court must analyze the relationships amongst the successful and unsuccessful claims. *See id.* at 434-35 (explaining that the more closely related the claims, the more difficult it will be to divide the hours on a claim-by-claim basis). If the claims "involve a common core of facts," or are based on "related legal theories," "[m]uch of counsel's time will likely be devoted to the litigation as a whole, making it difficult to divide the hours on a claim-by-claim basis." *Id.* at 435. Accordingly, the court should "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours that counsel reasonably expended on the litigation." *Id.*; *see Henlsey*, 461 U.S. at 436-37 (explaining that a court may make this determination in a number of ways, such as by eliminating specific hours or by reducing the award as a whole).

The parties agree that N.M. received relief on only one of three claims. *See* Pl.'s Surreply 2, ECF No. 29. Defendant argues that the fees should thus be reduced by two-thirds. *See* Def.'s Reply, ECF No. 26. The plaintiff posits that most of the work can be associated with either the successful or the unsuccessful claims, and thus an adjustment based on the division of work is more appropriate. *See* Pl.'s Sur-reply, 2, Aug. 5, 2013, ECF No. 29. The Court finds that the issues are interrelated and thus will not divide the hours on a claim-by-claim basis, but instead will reduce the full award amount.

The hearing officer found that N.M. was denied a FAPE on only one of the three issues for which N.M. requested relief. *See* Pl.'s Mot. Summ. J. Ex. 1c at 9, ECF No. 21 (finding that the parent was denied meaningful participation in the student's IEP meeting when DCPS failed to provide adequate English to Spanish translation). Nevertheless, this claim still shares a "common core of facts" to the remaining two claims on which N.M. lost: that DCPS was not implementing N.M.'s IEP, and that N.M.'s school was an inappropriate placement. Pl's Mot. Summ. J., Ex. 1c, 9.

For example, the claim that DCPS failed to implement N.M.'s IEP stemmed, in part, from the claim that DCPS failed to provide adequate translation. And both of these claims, although one successful and one unsuccessful, contributed to N.M.'s overall argument that N.M.'s school was an inappropriate placement. In fact, the hearing officer explicitly recognized this link between the successful claim and the unsuccessful educational placement claim. *See* Pl.'s Mot. Summ. J. Ex. 1c at 9, ECF No. 21 (asserting that the successful claim was "also significant because Parent wanted, and still wants, another educational placement for Student"). Accordingly, because the claims are sufficiently interrelated, the court should not divide the

hours on a claim-by-claim basis, but instead should reduce the award of attorneys' fees. *See Hensley*, 461 U.S. at 436-37 (focusing on the overall relief obtained).

The Court further believes it appropriate to reduce the total award by one-half. Of the three requests for relief, only two were truly separate substantive requests: 1) the request for a new MDT meeting, (on which N.M. was successful), 2) the request to place N.M. at the Episcopal Center for Children (on which N.M. was unsuccessful). Pl.'s Mot., Ex. 1c, 4. The third request for relief, a finding of denial of a FAPE on the previously presented issues, was merely a derivative declaratory request. *Id.* N.M. was ultimately successful on only the significantly secondary issue. After all, the MDT meeting may not result in the primary relief sought by N.M. — the change in school placement. *See Hensley*, 461 U.S. at 436-37 (focusing on the overall relief obtained). Nevertheless, the Court finds that a reduction by one-half is appropriate even though Plaintiff was successful on only a secondary issue. A certain amount of the work performed in any case is performed for all claims, and cannot be so easily sub-divided.[2]

The parties similarly disagree over the extent to which the petitioner S.S. prevailed. *Compare* Def.'s Reply, 9, (asserting that the petitioner was only successful on one-quarter of the *claims* presented) *with* Pl.'s Sur-reply, 2. (arguing that the petitioner obtained two-thirds of the *relief* requested). S.S's complaint requested three types of relief: 1) A declaration that S.S. was denied a FAPE in all four claims at issue; 2) injunctive relief in the form of an independent vocational evaluation, and a meeting to review all evaluations and to revise the IEP as appropriate; and 3) substantive relief in the form of compensatory education. *See* Pl.'s Sur-reply, Ex. 2, 3. S.S. obtained partial declaratory relief (a finding that FAPE was denied as to one of the

---

[2] The Court finds Plaintiff's claims analysis to be fairly logical and noted that the Defendant never responded to the argument, nor sought leave to file a sur-reply to address the new argument raised for the first time in Plaintiff's sur-reply. *See* Pl's Sur-reply in support of Pl's Mot. Summ. J., 2, Aug. 5, 2013, ECF No. 29.

four claims presented) and full injunctive relief. *See* Pl.'s Mot. Summ. J., Ex. 1d at 27-28 (asserting that the petitioner failed to meet its burden of proof on all but one issue presented). As a result, the Court finds that Plaintiff obtained approximately one-third of the relief requested. However, the Court again recognizes that a certain amount of work performed in any case is performed for all claims, and cannot be so easily sub-divided. Accordingly, the Court will reduce the attorney fee award by one-half to reflect S.S's limited success.

## 2. Specific Time Charges

### a. The Court Will Not Award Fees For An Advocate.

The defendant argues that all fees billed by Ms. Sharon Millis should be deducted from the plaintiff's invoice because Ms. Millis is an educational advocate and not a paralegal, as she is billed. *See* Def.'s Opp'n, 16. The Supreme Court has held that costs relating to the services of a non-attorney educational consultant are not authorized under the IDEA. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 300 (2006) ("[t]he terms of the IDEA overwhelmingly support the conclusion that prevailing parents may not recover the costs of experts or consultants."). The Plaintiffs counter that Ms. Millis's work is properly credited as paralegal work, as her professional role fits within the definition of a paralegal or legal assistant, and that her time should be included in the attorneys' fees award. *See* Pl.'s Reply, 9-10; Pl.'s Mot. Summ. J., Ex. 3, ¶20.

Although Plaintiffs assert that Ms. Millis exclusively serves as a paralegal, Ms. Millis describes her current position on her CV as an "Independent Special Education Advocate/ Expert for Special Education Attorneys/Courts/Parents." Def.'s Reply, Ex. 1. Moreover, this Court has previously denied attorneys' fees for the work of Ms. Millis on the grounds that she is not a paralegal but an educational advocate. *See Crawford v. Dist. of Columbia*, 2012 WL 1438985, at

*6 (D.D.C. Apr. 26, 2012) (denying costs relating to the service of Ms. Millis). Here, Millis actually testified at a hearing (presumably as an expert). Pl.'s Mot. Ex. 1d at 3. And it appears Ms. Millis billed for this time as a paralegal.[3] *See* Pl's Mot. Summ. J., Ex. 2 (corrected), at 57, ECF No. 28. If Ms. Millis is serving as an expert in this capacity, while still being billed as a paralegal, the Court presumes that she served as an expert consultant throughout. For these reasons, the Court bars Plaintiffs from recovering any fees for Ms. Millis.

b. *The Court Will Award Fees Incurred by Mr. Ostem and Mr. Nahass, Before Licensed in the District, at a Paralegal/ Law Clerk Rate.*

The plaintiffs also seek fees for Nicolas Ostem and Zachary Nahass for time periods when they were not yet admitted to the District of Columbia bar. *See* Def.'s Opp'n 21. The plaintiffs explain that both Mr. Ostem and Mr. Nahass were billed as paralegals before entering the D.C. bar on December 7, 2009 and February 2, 2008, respectively. Pl.'s Reply, 11.

Courts have taken different approaches when determining an award of attorney's fees incurred by lawyers who are not licensed to practice in the District of Columbia: some courts award fees to unlicensed attorneys at a rate that is normally earned by paralegals, *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 113 (D.D.C. 2010), whereas other courts deny fees altogether, *Agapito v. Dist. of Columbia*, 477 F. Supp. 2d 103, 115-16 (D.D.C. 2007). The *Agapito* court denied attorney's fees for the work of three unlicensed attorneys after determining that these attorneys engaged in the unauthorized practice of law in violation of D.C. Ct. App. R. 49. *See Agapito*, 477 F. Supp. 2d at 111 (reasoning that Rule 49(c)(5) does not permit an attorney not licensed in the District to practice law in administrative proceedings before DCPS).

---

[3] The Court notes that Ms. Millis only billed for the time of her testimony versus the time for the full hearing billed by the attorney. *See* Pl.'s Mot. Summ. J. Ex. 2 (corrected), at 57, ECF No. 28.

These unlicensed attorneys had represented plaintiffs in administrative due process hearings before DCPS. *See Agapito*, 477 F. Supp. 2d at 106.

Unlike the attorneys in *Agapito*, Mr. Ostem and Mr. Nahass did not engage in the unauthorized practice of law in violation of Rule 49. There is no evidence to suggest that Mr. Ostem or Mr. Nahass ever represented any student in an administrative due process hearing before DCPS prior to becoming licensed in the District. Pl.'s Mot. Summ. J. Ex. 2, corrected Aug.5, 2013, ECF No. 28. Rather Mr. Ostem and Mr. Nahass engaged in supervised work similar to that of a paralegal or law clerk during the time periods in which they were not licensed in the District. For example, Mr. Ostem and Mr. Nahass billed at the paralegal/law clerk rate for work such as calling schools and clients, reviewing student records, drafting and emailing documents, and scheduling meetings. Pl.'s Mot. Summ. J. Ex. 2 (corrected), ECF No. 28. The record indicates that while unlicensed, Mr. Ostem or Mr. Nahass only attended due process hearings when accompanied by Mr. Tyrka, and it was Mr. Tyrka who represented the students at these hearings. Mr. Tyrka billed his time accordingly. Pl.'s Mot. Summ. J. Ex. 2 (corrected), ECF No. 28. No time was billed for Mr. Ostem's or Mr. Nahass's participation or attendance in these hearings, as indicated by "NC" (no charge) on the invoices. Pl.'s Mot. Summ. J. Ex. 2 (corrected), ECF No. 28. Because Mr. Ostem and Mr. Nahass did not engage in the unauthorized practice of law in violation of D.C. Ct. App. R. 49, the court will award fees for work performed by Mr. Ostem and Mr. Nahass, while unlicensed in the District, at a reasonable paralegal/ law clerk hourly rate. *See infra* Part III (B)(2).

### c. The Court Will Award Fees for Paralegals.

The defendant argues that the plaintiff has failed to provide enough information about the qualifications of the individuals that Plaintiff has designated and billed as "paralegals": Camille

McKenzie, Yanet Scott, and Olivia West. Def.'s Opp'n Mot. 18, ECF No. 22. The American

Bar Association ("ABA") defines a paralegal or legal assistant as a person "qualified by

education, training or work experience who is employed or retained by a lawyer, law office,

corporation, governmental agency or other entity and who performs specifically delegated

substantive legal work for which a lawyer is responsible." Pl.'s Reply, 9; Pl.'s Reply, Ex. 1.

Courts recognize that paralegals "are capable of carrying out many tasks, under the supervision

of an attorney, that might otherwise be performed by a lawyer." *Missouri v. Jenkins by Agyei*,

491 U.S. 274, 288 n.10 (1989); *see also Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 580

(2008) (including the work of paralegals in an attorney's fee award because the paralegals' work

contributed to the attorney work product). Applying the ABA definition, the plaintiffs argue that

they have established the training and experience of all the firm personnel, including paralegals.

Parties requesting attorneys' fees carry the burden of justifying requested rates for law

clerks or paralegals by providing sufficient information detailing the non-attorneys' experience

and education. *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004)

(explaining that the plaintiffs' requested rates will be reduced because they have "not even taken

the basic step of submitting an affidavit detailing the non-attorneys' experience and education").

Although the plaintiffs have not provided specific details regarding the educational backgrounds

of Camille McKenzie, Yanet Scott, and Olivia West, they submitted a verified statement

indicating that each paralegal worked under the supervision of attorneys after receiving training

for a period of approximately three months. Pl.'s Reply Ex. 2, ECF No. 25. The verified

statement also indicates the year in which each paralegal began working for Tyrka & Associates.

Pl.'s Reply Ex. 2, ECF No. 25. The Court finds this to be sufficient information of the

paralegals' supervision and training, and finds that the plaintiffs have met their burden in establishing the paralegals' qualifications. *See* Pl.'s Reply, Ex. 2.

Moreover, while clerical or secretarial tasks should not be billed at a paralegal rate, the work performed by Camille McKenzie, Yanet Scott, and Olivia West is consistent with the type of work appropriate for a paralegal. *See Missouri*, 491 U.S. at 288 n.10 (listing tasks paralegals may perform, including factual investigation; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence); *see also Bachman v. Pertschuk*, 1979 WL 162 at *13 (D.D.C. Mar. 14, 1979) (stating that some attorney performed tasks, such as indexing and numbering documents, would have been more appropriately performed by trained paralegals). Here the paralegals were billed for work such as updating the compliance matrix, scheduling meetings, and drafting letters and emails. Pl.'s Mot. Summ. J., Ex. 2 (corrected), ECF No. 28. Accordingly, the plaintiffs correctly billed the work of Camille McKenzie, Yanet Scott, and Olivia West as paralegals and this Court will award fees for their work.[4]

### d. *Travel Costs Are Already Appropriately Reduced.*

The defendant correctly states that the plaintiffs' travel costs should be reduced by fifty percent of the hourly rate deemed appropriate by this Court. *See Bucher v. Dist. of Columbia*, 777 F. Supp. 2d 69, 77 (D.D.C. 2011) (explaining that in this Circuit, travel time is compensated at half of the attorney's rate). However, the plaintiffs respond that they have already accounted for this reduction. *See* Pl.'s Reply, 12. Indeed, the time itemizations submitted by the plaintiffs

---

[4] If a plaintiff's attorney is not compensated for the tasks performed by a paralegal, the attorney may choose to perform these tasks himself/herself, and seek compensation at a lawyer's rate, rather than at a paralegal's rate. Such incentives would work towards increasing, rather than decreasing, the overall amounts of fees sought.

do reduce attorney travel time by fifty percent.  *See* Pl.'s Mot. Summ. J. Ex. 2 (corrected), ECF No. 28.

### e.  The Court Will Reduce Faxing Costs.

The defendant asserts that faxing costs should be reduced from $1.00 per page to $0.15 per page.  *See* Def.'s Opp'n, 22.  Plaintiffs counter that the faxing charges are reasonable because they incorporate the labor of the activity.  *See*  Pl.'s Reply, 12.

An attorney "is entitled to all expenses associated with the litigation that [she] would normally expect to pass on to fee paying clients," so long as the costs are reasonable and reasonably incurred.  *See Holbrook v. Dist. of Columbia*, 305 F. Supp. 2d 41, 46 (D.D.C. 2004) (quoting *McKenzie v. Kennickell*, 645 F. Supp. 437, 452 (D.D.C. 1986).  Costs for faxing are customarily included in prevailing party fee awards in IDEA litigation, *see McClam v. Dist. of Columbia*, 808 F. Supp. 2d 184, 190-91 (D.D.C. 2011), but costs have often been reimbursed at the reduced rate of $0.15 per page. *See Salazar v. Dist. of Columbia*, 2014 WL 342084 at *14-15 (D.D.C. Jan. 30, 2014) (reducing plaintiffs' fax rates from $0.50 per page to $0.15 per page); *Johnson v. Dist. of Columbia*, 805 F. Supp. 2d 74, 81-82 (D.D.C. 2012) (concluding that the $0.15 rate will suffice for both faxes and photocopies); *see also McClam*, 808 F. Supp. 2d at 191 (describing recovery for copying and faxing at $0.25 per page as excessive).  *But see Huntley v. Dist. of Columbia*, 860 F. Supp. 2d 53, 61 (D.D.C. 2012) (awarding $1.00 per page for faxing expenses where the costs were not contested by the defendant).

 Here, the plaintiffs seek a rate for faxing at more than six times the recognized reasonable rate of $0.15 per page.  *See* Pl.'s Reply, 12 (arguing that their faxing costs have been standard for years).  Beyond suggesting that their rate of $1.00 per page incorporates the labor of the activity, the plaintiffs provide no other explanation as to why their rates exceed the $0.15 per

page ratio previously adopted, nor do they offer any justification for the $0.45 per page labor cost. *See Johnson*, 805 F. Supp. 2d at 81-82 (D.D.C. 2012) (finding $0.15 per page reasonable in the absence of any indication that the party requesting the fees paid a higher amount to an outside vendor); *see also Salazar*, 2014 WL 342084 at *14-15 (analyzing faxing expenses against the ratio recognized as reasonable by the *Johnson* court). Accordingly, this Court reduces plaintiffs' faxing rates to $0.15 per page.

### B. The Plaintiffs' Requested Hourly Billing Rates

#### 1. Enhanced *Laffey* Rates Are Not Appropriate.

The plaintiffs urge the court to adopt the enhanced *Laffey* Matrix, Pl.'s Mot. Summ. J. 8, ECF No. 21, which was updated to "reflect…increases in the National Legal Services prepared by the United States Bureau of Labor Statistics." *See Rooths v. Dist. of Columbia*, 802 F. Supp. 2d 56, 61 (D.D.C. 2011). Plaintiffs cite to *Salazar v. Dist. of Columbia*, a non-IDEA case in which a court in this District adopted the enhanced *Laffey* rates. 123 F.Supp.2d 8, 14–15 (D.D.C. 2000). Yet plaintiffs cite no case in which a judge of this Court has awarded the enhanced *Laffey* rate to reimburse a plaintiff in an IDEA matter. The court in *Rooths* declined to award the enhanced *Laffey* rates for two reasons: 1) the matrix was generated using national statistics rather than local statistics, and therefore, it does not represent increases in and around the District of Columbia, but instead increases in the national Legal Services prepared by the United States Bureau of Labor Statistics; and 2) the matrix did not reasonably approximate the rates associated with IDEA litigation in the District of Columbia. *See Rooths*, 802 F. Supp. 2d at 62 (recognizing that "some sectors of the legal services industry have experienced rapid fee inflation in recent years").

Plaintiff argues that the Plaintiff's counsel rates, that is the rates the firm has customarily charged to and received from its clients, is the best method to determine the prevailing market rate. Pl's Mot. Summ. J., 8-9. Plaintiff provides evidence of this first in the form of prior settlements in which the District agreed to pay an amount of fees based on an enhanced *Laffey* rate. *see* Pl.'s Mot. Summ. J. Ex. 3, ECF No. 21. However, the Court does not find this evidence sufficient to show prevailing market rates in the District of Columbia. *Rooths,* 802 F. Supp. 2d at 62 (reasoning that "the amount of fees that the District agrees to pay an attorney as part of a bulk settlement is not determined by market forces"). Mr. Douglas Tyrka's affidavit does not provide sufficient information to determine whether the firm's settlements with DCPS were based on prevailing market rates. Pl.'s Mot. Summ. J. Ex. 3, ECF No. 21.

Plaintiff also provides evidence of the alleged market rate by relying on the rate charged to some of the firm's clients. Pl.'s Mot. Summ. J. Ex. 3, ECF No. 21 According to Mr. Tyrka's affidavit, "several clients" have paid the firm at the enhanced *Laffey* rate, regardless of whether reimbursement is ever obtained. *Id.* However, Mr. Tyrka's affidavit does not provide sufficient information for the Court to determine whether these rates represent the market rate for routine IDEA litigation. For example, Mr. Tyrka's affidavit does not specify, out of the hundreds of IDEA cases that the firm handles, how many of the firm's clients pay the enhanced rate. As a result, the Court cannot determine whether the enhanced rate is the firm's standard rate for paying clients, or whether it is an outlier. In addition, Mr. Tyrka's affidavit does not disclose the sophistication of the clients agreeing to pay the enhanced rate. After all, an unsophisticated party may be unaware of the market rate, or may lack objectivity, as the case concerns his/her child's education. Accordingly, the Court finds that there is insufficient information to conclude that the enhanced *Laffey* rates are the market rate and thus will not award enhanced *Laffey* fees.

## 2. The Court Will Not Award Laffey Rates Because the Plaintiffs Have Not Established That Their Case was Particularly Complex.

The defendant next contends that the plaintiffs are entitled only to some rate below the *Laffey* rate, as the matters at hand are simple local administrative matters and not the type of complex federal litigation for which *Laffey* rates were adopted. Def.'s Opp'n, 13.

The *Laffey* Matrix serves as a tool to help gauge the overall reasonableness of the fees sought; therefore, it is within the court's discretion to look at the complexity of the case to determine whether rates are reasonable. *See Flores*, 857 F. Supp. 2d 15, 21 (D.D.C. 2012) (explaining that federal courts do not automatically have to award *Laffey* rates). A fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107.

The plaintiffs have submitted an affidavit sufficiently describing their attorneys' experience, skill, and reputation. *See* Pl.'s Mot. Summ. J., Ex. 3 (asserting that the firm is specialized in the field of special education and that it has won the most substantial relief obtained in IDEA cases for more than 100 children). However, the plaintiffs have not offered evidence sufficient to link *Laffey* to the prevailing market rate. Therefore, the plaintiffs have failed to satisfy their burden.

Indeed, while the *Laffey* Matrix represents prevailing market rates in the local community, the rates are the presumed maximum rates appropriate for "complex federal litigation." *Covington*, 57 F.3d at 1103; *see also DL v. Dist. of Columbia*, 256 F.R.D. 239, 243 (D.D.C. 2009) (recognizing that the *Laffey* Matrix represents the local community's market rates for complex litigation). Courts in this district do not generally recognize IDEA litigation as a type of complex federal litigation. *See, e.g., Flores*, 857 F. Supp. 2d at 21 (finding that IDEA

litigation is not generally complex); *McClam*, 808 F. Supp. 2d at 189 (agreeing with the defendant's objection to the application of *Laffey* rates by reasoning that the IDEA litigation was not complex); *Rooths*, 802 F. Supp. 2d at 63 (noting that most IDEA litigation is not complicated); *Wilson v. Dist. of Columbia*, 777 F. Supp. 2d 123, 127 (D.D.C. 2011) (explaining that the plaintiff failed to recognize that the *Laffey* Matrix is not generally applicable to IDEA cases); *Agapito v. Dist. of Columbia*, 525 F. Supp. 2d 150, 150 (D.D.C. 2007) (declining to apply *Laffey* rates to relatively simple and straightforward IDEA cases). *But see, e.g., Jackson v. Dist. of Columbia*, 696 F. Supp. 2d 97, 102 (D.D.C. 2010) (concluding that no legal error was committed in relying on the *Laffey* Matrix to determine prevailing market rates in an IDEA case); *Cox v. Dist. of Columbia*, 754 F. Supp. 2d 66, 75-76 (D.D.C. 2010) (finding that the administrative IDEA proceeding was complex because it involved the admission of sixty-five exhibits, the testimony of four witnesses, and written closing statements, and took over two years to resolve).

The plaintiffs argue that the attorneys' knowledge of IDEA law, experience, and understanding of the procedural aspects of the hearings helped obtain favorable decisions for the students. *See* Pl.'s Reply 5-7, ECF No. 24. The plaintiffs have not, however, put forward any evidence to suggest that their claim was particularly complex, thus entitling them to *Laffey* rates. *See Crawford*, 2012 WL 1438985, at *3 ([t]his case involves the IDEA, which is *not* complex federal litigation because most if not all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearings."); *cf. Covington*, 57 F. 3d at 1106 (noting that [p]laintiffs' counsel handled very well this complicated federal case, which involved the constitutional claims of ten plaintiffs against sixteen defendants, lengthy discovery, many motions and a jury trial"). An independent review of the record indicates that the

plaintiffs' cases revolved around a number of routine administrative hearings, many of which involved similar claims and identifiable requests for relief. *See* Pl.'s Mot. Summ. J., Exs. 1b-1d.

The Court notes the following examples as evidence of the lack of complexity in many of these IDEA cases: 1) in the case involving R.B., the DCPS attorney did not show up for the hearing, and a default judgment was entered for the Plaintiff as no DC witnesses testified, Pl.'s Mot. Summ. J., Ex. 1c at 20-21; 2) in the case involving R.S., no witnesses were presented at the hearing and the single matter on which Plaintiff succeeded was conceded by DCPS, Pl.'s Mot. Summ. J., Ex. 1d at 27; 3) in the case involving T.F., there were a limited number of witnesses if any and there were no contested legal issues in the matter, Pl.'s Mot. Summ. J., Ex. 1d 30, 38; 4) in the case involving T.T., the parties reached a settlement agreement and no hearing was conducted, Pl.'s Mot. Summ. J., Ex. 1d at 42-43; 4) in the case involving A.S.(1), DCPS failed to file a response and Plaintiff was granted a Motion for Default Judgment, Pl.'s Mot. Summ. J., Ex. 1a at 2; 5) in the case involving A.S.(2), DCPS failed to produce any witnesses and thus, Plaintiffs merely had to carry their burden of proof on the issues, Pl.'s Mot. Summ. J., Ex. 1a at 9; and 6) in the case involving D.S., DCPS voluntarily agreed to grant the relief Plaintiff sought, and the remaining issues were not ripe for review, Pl.'s Mot. Summ. J., Ex. 1a at 28. Accordingly, based on this record, the Court will not grant the maximum *Laffey* rates reserved for complex federal litigation.[5]

---

[5] The Court additionally notes that the cases for which fees are sought involved very few contested legal issues. Instead, almost all of them simply required the application of case-specific facts to a well-established legal framework. The application of facts to a well-established legal framework is not dissimilar to the work typically done by court-appointed criminal defense attorneys, who are compensated at an hourly rate of $126.00. *See* CJA Appointment Guidelines, Vol.7, Part A, Ch. 2, §230.16, available at:
http://www.uscourts.gov/FederalCourts/AppointmentOfCounsel/CJAGuidelinesForms/vol7Part A/vol7PartAChapter2.aspx#230_23_10. Criminal defendants are able to secure competent counsel at that rate— which is the governing criterion to determine the applicable market rate.

As the maximum rates for complex federal litigation are not appropriate, the court is faced with determining the appropriate rates for this IDEA litigation. The defendant argues that three-quarters of the *Laffey* rate is the maximum amount that would be appropriate in this case. *See* Def.'s Opp'n, 8. The plaintiffs argue that if this Court accepts the defendant's request to reduce hourly rates by three-quarters that the reduction be applied to the enhanced *Laffey* rates. Pl.'s Reply, 9. As already concluded, this Court will not use the enhanced *Laffey* rate. *See supra* Part III.B.1. Instead, it adopts Judge Friedman's determination of hourly rates in *Rooths*, a non-complex IDEA case, which awarded rates equal to three-quarters of the *Laffey* rates. *See Rooths*, 802 F. Supp. 2d at 63 (awarding three-quarters of the *Laffey* rates for Mr. Tyrka, Mr. Ostrem, and Mr. Nahass); *see also Flores v. United States*, 857 F. Supp. 2d 15, 21 (D.D.C. 2012) (applying the *Laffey* Matrix as a starting point). The Court will first adjust the rates based on the years worked and the experience of each attorney and paralegal according to the *Laffey* Matrix, before further reducing these rates by one-quarter due to the non-complex nature of the matters.[6]

---

*See Lewis v. Coughlin*, 801 F.2d 570, 573, 576 (2d. Cir. 1986) (finding that "an attorney's fee award should be only as large as necessary to attract competent counsel" and collecting cases in other sorts of Federal litigation in which fees awarded "are adequate to attract competent counsel, but which do not provide windfalls to attorneys"). Although court-appointed criminal defense counsel are guaranteed payment whether or not their client prevails, their hourly rate stands in stark contrast to the enhanced *Laffey* rates sought here.

[6] Using the *Laffey* matrix as a starting point for determination of a reasonable hourly rate, this Court determines the hourly rates as follows: Douglas Tyrka [attorney with 11 to 15 years of experience during the relevant time period]:$410 (2008-09), $410 (2009-10), $420 (2010-11), $435 (2011-12), $445 (2012-13) instead of $625; Zachary Nahass [attorney with 1 to 6 years of experience during the relevant time period]: $225 (2008-09), $225 (2009-10), $230 (2010-11), $285 (2011-12), $290 (2012-13), instead of $312; Nicolas Ostem [attorney with 1 to 5 years of experience during the relevant time period]: $225 (2009-10), $230 (2010-11), $240 (2011-12), $290 (2012-13), instead of $312; Patrick Meehan, Camille McKenzie, Yanet Scott, and Olivia West [paralegal/law clerk]: $130 (2008-09), $130 (2009-10), $135 (2010-11), $140 (2011-12), $145 (2012-13), instead of $170.

Accordingly, for hours billed between 2008 and 2013, the hourly rates are as follows: Mr. Tyrka: $307.50 (2008-09), $307.50 (2009-10), $315.00 (2010-11), $326.25 (2011-12), $333.75 (2012-13); Mr. Nahass: $168.75 (2008-09), $168.75 (2009-10), $172.50 (2010-11), $213.75 (2011-12), $217.50 (2012-13); Mr. Ostem: $168.75 (2009-10), $172.50 (2010-11), $180.00 (2011-12), $217.50 (2012-13); paralegals/law clerks: $97.50 (2008-09), $97.50 (2009-10), $101.25 (2010-11), $105.00 (2011-12), $108.75 (2012-13).

### 3. The Plaintiffs' Fee Award is Subject to a Fee Cap.

The defendant correctly argues that its ability to pay any award for those matters initiated prior to March 11, 2009 is capped by Section 814 of the Omnibus Appropriations Act, 2009, Pub. L. No. 111-8, 123 Stat. 524. Although defendant's ability to pay the award may be capped, the court may nonetheless issue an opinion detailing the award in full. *See Calloway v. Dist. of Columbia*, 216 F.3d 1, 3 (D.C. Cir. 2000) (recognizing the "potential incongruity of the courts' awarding fees that [federal law] prohibits the District from paying," but concluding that "reconciling inharmonious statutory directives is Congress' responsibility, not the courts'").

### 4. The Plaintiffs Should Be Awarded Total Fees and Costs of $159,133.74

The total fees and costs were calculated by first adopting the *Laffey* rates. These rates were then further reduced by one-quarter because the plaintiffs failed to establish the complexity of the involved IDEA litigation. After calculating this rate, fees were reduced by one-half for work performed on both N.M.'s case and S.S.'s case to account for limited success. Faxing costs were reduced from $1.00 per page to $0.15 per page. Mr. Ostem and Mr. Nahass were billed at the rate equal to three-quarters of the *Laffey* rates for paralegals/ law clerks for work performed while unlicensed in the District. Costs incurred by work completed by Sharon Millis, an educational advocate, were not awarded.

In light of the conclusions reached in today's memorandum opinion, this Court will award $159,133.74 in attorneys' fees.

## IV.  CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment shall be granted in part and denied in part, and Defendant's Cross-Motion for Summary Judgment shall be granted in part and denied in part.


Dated:  March 6, 2014                                  RUDOLPH CONTRERAS
                                                       United States District Judge